UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LORI J. DANIEL                                                                                      PLAINTIFF

V.                                    No. 4:22-CV-299-BRW-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                          DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.   Introduction

On June 1, 2020, Plaintiff Lori J. Daniel ("Daniel") filed a Title II application for a period of disability and disability insurance benefits. (Tr. at 11). In the application, she alleged disability beginning on July 1, 2014. *Id*. She later amended

her onset date to no earlier than December 1, 2016, and no later than December 31, 2018. *Id*.

Subsequent to a prior application, an Administrative Law Judge ("ALJ") concluded, in a written decision dated November 30, 2017, that Daniel was not disabled. *Id*. *Res judicata* bars the reopening of that prior application, so the beginning of the adjudicated period for the instant application is December 1, 2017, the day after the first ALJ's decision. *Id*.; *see* 20 C.F.R. § 404.957. Additionally, the date last insured for Daniel is December 31, 2019; in order to prevail, she must show disability prior to that date.[1] (Tr. at 12–14).

Daniel's instant application was denied at the initial and reconsideration levels of review. (Tr. at 107–12). In a written decision dated June 9, 2021, an ALJ denied Daniel's application. (Tr. at 11–23). The Appeals Council denied Daniel's request for review on February 2, 2022. (Tr. at 1–5). The ALJ's decision now stands as the final decision of the Commissioner, and Daniel has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II.   The Commissioner's Decision

The ALJ found that Daniel did not engage in substantial gainful activity during the period from her amended alleged onset date of December 1, 2017, through

---

[1] *Pyland v Apfel*, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c)).

2

her date last insured of December 31, 2019.[2] (Tr. at 14). At Step Two, the ALJ determined that Daniel has the following severe impairments: degenerative disc disease and dysfunction of a joint. *Id*.

At Step Three, the ALJ determined that Daniel's impairment did not meet or equal a listed impairment.[3] *Id*. Before proceeding to Step Four, the ALJ determined that Daniel had the residual functional capacity ("RFC") to perform work at the light exertional level, although she could no more than occasionally stoop and crouch. (Tr. at 16).

At Step Four, the ALJ utilized testimony from a Vocational Expert ("VE") to determine that Daniel was capable of performing past relevant work as a stock clerk.[4] (Tr. at 21). Further relying upon VE testimony, the ALJ found, based on Daniel's age, education, work experience and RFC, that there are jobs in the national economy that Daniel can perform, including positions such as powered screwdriver

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[3] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

[4] The VE testified that the stock clerk position was heavy exertional work, as generally performed, but light exertional work as actually performed at Acosta and medium exertional work as actually performed at Hallmark and Major Brand. (Tr. at 21, 57). Daniel's RFC provided for light exertional work. (Tr. at 16).

operator, merchandise marker, and small product assembler. (Tr. at 22–23, 58). Therefore, the ALJ concluded that Daniel was not disabled. *Id.*

### III.   Discussion

#### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

## B.  Daniel's Arguments on Appeal

Daniel contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ did not fully develop the record; (2) the ALJ did not properly evaluate Daniel's subjective complaints; and (3) the RFC did not incorporate all of Daniel's credible limitations.

Daniel focuses her arguments on her back injury.[5]  Pain management records document lumbar spondylosis, sacroiliac disorder, lumbar degenerative disc disease, and trochanteric bursitis of the left hip. (Tr. at 17, 315–19). Daniel had lumbar steroid injections in late 2018, from which she reported 50-60% pain relief for several weeks.[6] (Tr. at 17, 383–88). She also noted improvement in her ability to exercise and walk after steroid injections in early 2019. (Tr. at 377, 393). In December 2019, neurosurgeon Terrance Ryan, M.D., observed negative straight-leg

---

[5] Daniel makes a passing claim that mental impairments were disabling, but she received no formal mental health treatment, and the Disability Determination Services ("DDS") psychiatry experts found that mental impairments were nonsevere. (Tr. at 80–105). Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

[6] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Locher v. Sullivan*, 968 F.2d 725, 728 (8th Cir. 1992).

raise and negative Patrick's maneuver (two tests to determine extent of back pain). (Tr. at 17, 352). Daniel also displayed full motor strength and normal reflexes. *Id*. She had normal gait and stance.[7] (Tr. at 17, 407).

Daniel underwent SI joint fusion surgery in June 2020, after the relevant time-period. (Tr. at 451, 521–27). A worsening condition and subsequent treatment from after the relevant time-period are usually not relevant to an ALJ's decision. *See Turpin v. Colvin*, 750 F.3d 989, 993–95 (8th Cir. 2014). Instead, a claimant may file a new application for benefits based upon new medical records from a later time period.

Daniel asserts that the ALJ should have obtained a treating physician's medical assessment or ordered a consultative examination.[8] However, the DDS medical experts ***did*** offer medical opinions: the medical experts said that Daniel could perform work at the light exertional level. (Tr. at 80–105). These opinions

---

[7] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

[8] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant, and the ALJ's duty to develop is not never-ending. *Id*.; *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011).

were supported by the record and constituted substantial evidence. The ALJ discussed these opinions and explained how he found them to be persuasive. (Tr. at 20). The ALJ also discussed the treatment records from the relevant time-period, including Daniel's positive response to treatment. The record was fully developed.

Next, Daniel alleges that the ALJ did not properly evaluate her subjective complaints.[9] At the hearing, Daniel testified that she was virtually unable to perform any daily activities. (Tr. at 48–51). However, in her function report, which she filled out on June 27, 2020, Daniel said she was able to attend to personal care, prepare meals daily, do light household chores, drive, and shop in stores.[10] (Tr. at 223–28). In his analysis of subjective complaints, the ALJ also discussed the nature and location of Daniel's pain, and the relatively normal clinical examination findings. (Tr. at 15–19). Additionally, he addressed the opinions of the medical experts. (Tr.

---

[9] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

[10] Such daily activities undermine her claims of disability. *See Edwards v. Barnhart*, 314 F.3d 964, 966–67 (8th Cir. 2003) (finding the claimant's daily activities of shopping, driving, attending church, and visiting relatives to be inconsistent with her alleged pain).

at 19–20). The ALJ considered all of these factors and reasonably concluded that Daniel's subjective complaints were not consistent with the balance of the record evidence. The ALJ did not err.

Finally, Daniel contends that the RFC did not fully incorporate her limitations.[11] Again, the ALJ cited the medical opinion evidence, as well as Daniel's limited treatment and positive response thereto. Daniel was able to perform a variety of daily activities. No doctor placed any functional restrictions on Daniel. She has not shown that work at the light exertional level exceeded her abilities. The RFC took into account all of Daniel's credible limitations.

## IV. Conclusion

There is substantial evidence to support the Commissioner's decision that Daniel was not disabled. The record was fully developed, the ALJ accounted for Daniel's subjective complaints, and the RFC incorporated all of her limitations.

---

[11] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy*, 648 F.3d 605 at 614. In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 12th day of May, 2023.

_____
UNITED STATES MAGISTRATE JUDGE